## Case No.15,937.

### UNITED STATES v. ONE HUNDRED AND SIXTY-THREE, ETC., BARRELS OF WHISKEY.

[5 West. Jur. 150.]

District Court, E. D. Missouri. April, 1871.

INTERNAL REVENUE — INFORMERS — JUDGMENT — POWER OF COURT TO MODIFY AFTER TERM.

1. Where upon an information of forfeiture for violation of the internal revenue laws, a judgment has been entered, distributing the proceeds in the registry in accordance with the rights of different parties, as found by the court, the judgment cannot be modified or altered by the court after the close of the term. Any errors in the proceedings, not merely formal, must be corrected by proceedings in the appellate tribunal; and even at the suggestion of the treasury department, the court cannot alter or change its records.

2. Informations were filed against several lots of whiskey for violations of the internal revenue acts. By order of court the several cases were consolidated, and upon the trial a verdict was found in favor of the government, Feb. 28, 1870, for the value of the whiskey for which the claimant had given bond. Pending a motion for a new trial, the claimant by an arrangement with the department, paid into the registry the sum of $12,221.07, instead of the value assessed at $27,781.31, and on May 27, 1870, the motion for new trial was overruled and judgment entered. In one of the cases the former collector was entered as informer, and in another, one Hunter was found to be the first informer, and the order was made for the payment of the money in the registry of the court to the collector, to be by him distributed in conformity with the judgment of the court on Sept. 28, 1870.

[This was a motion made by the collector for leave to return into the registry money paid to him under a final judgment rendered in a proceeding for the forfeiture of 163, 143, and 163 barrels of whiskey, Matteson and others claimants.]

TREAT, District Judge. A motion was made by the collector of internal revenue for the First Missouri district, pursuant to instructions received by him from the acting commissioner, for leave to return into the registry money paid to him under a final judgment rendered by this court at a prior term in case 1476. Said motion was filed January 9, 1871, and a rule entered the same day on the informer to show cause on the 19th of said month why said leave should not be granted. On said 19th, the informer filed these objections; and the legal propositions arising were presented by his counsel and the district attorney respectively.

By the judgment of this court at a former term it was ascertained that Barton Able was the "first to inform in the cause whereby judgment of forfeiture," was rendered in case No. 1476, and John A. Hunter in case No. 1477. Pursuant to the final judgment then rendered the money to which the United States and the informer in No. 1476 were respectively entitled. was paid to the collector to be by him distributed accordingly. Thus the judgment of a former term was not only rendered, but duly executed so far as the records of this court are concerned. The acting commissioner at the time being of opinion that the case of Dorsheimer v. U. S., 7 Wall. [74 U. S.] 166, ought to have controlled the former action of this court, and consequently that its judgment was erroneous, instructed the collector to dispose of the money paid to him out of the registry under that judgment, differently from the terms of the judgment. It is obvious that the collector was thus placed in an embarrassing position. The only money that passed into his hand was received by him pursuant to that judgment and subject to its requirements. On further representation of the matter to the commissioner he was required to make the pending application. The informer was cited in. not because the court supposed it had

any further control over the judgment, but that if he chose to agree to a surrender of his legal rights he might do so of record. As he insists upon his rights as fixed by that judgment which this court has now no power to alter, modify or annul, no action can be had to disturb or affect it. If error was committed the law indicates the proper mode and time for correcting the same, and does not permit this court to vacate or change its judgments after the expiration of the term at which they were rendered. That doctrine is too well settled to admit of question; and this court can detect no possible object in view by this motion, except such as would practically violate said well established and essential rule of law. If said money were returned to the registry, it would still be subject to said judgment; otherwise the repeated decisions of the United States supreme court in like cases are of no obligatory force. It certainly is desirable that uniformity of action should exist between the courts and revenue officers; but the courts must construe the statutes for themselves and enforce their provisions in all cases before them, subject to review only by the proper appellate tribunals, even if perchance their judgments do not accord with the views or rulings of said executive officer. In this case there was no exception or writ of errors, and therefore the power of this court over such has ceased, only so far as may be necessary to enforce the judgment. The case referred to in the 7th Wallace is for many reasons deemed inapplicable to the case here. The power to remit so far as informers are concerned is somewhat different before and after judgment. When a suit in rem results in a judgment of forfeiture that judgment is ordinarily enforced by a sale of the res the proceeds of which pass into the registry to be distributed according to the terms of the final order. If a remission as to a part of said proceeds is had the residue remains to be paid over. If the proceeds were $28,000 for instance, and $18,000 were remitted, there would remain $10,000 for division between the informer and the United States. The reasons inducing the remission of a part are not considered by the court, for the power to remit is exclusive of its authority. The fact that the res was released on stipulation at the appraised value does not change the legal principle. It was the res that was condemned, and that, on remission in whole or part, was to be restored or after the sale the whole or part of the proceeds thereof. Under the stipulation the principal and sureties were to pay into the registry the value of the property. Of that sum a part was remitted, leaving the residue to be distributed between the United States and the informer. The court in its judgment of the forfeiture of the res had nothing to do with the collection of taxes in New Orleans or outside propositions. If before the trial the suits had been dismissed after compromise, on payment to

the collector of specified sums for taxes, penalties, &c., then the secretary of the treasury would, under section 179 of the internal revenue law (July 13, 1866 [14 Stat. 98]), and subsequent acts, determine what part, if any, of the compromise fund should be paid to one claiming to be informer; but where a trial is had, and the informer is ascertained by the court, and the money passes through the registry, it is apprehended that a different rule obtains. However that may be, this court cannot change its judgment of a prior term, whereby an essentially new judgment will be substituted, prejudicial to the rights of informers, or others in interest.

This motion has been entertained and is now formally passed upon, in order that the action of the court may, if practicable, be reviewed by the appropriate judicial tribunal. Whether the requirements of the law concerning informers, are politic or impolitic, congress must decide. The courts can only enforce the law as it exists. Under the practice here established, informers are compelled to give security for costs, and thus make themselves directly answerable, therefore, if the suits fail. Consequently they are expected to render efficient aid, not only in the detection of officers, but in their successful prosecution. In the case under consideration, there was protracted litigation, advances of money by the informers, testimony taken in New Orleans and elsewhere at great expense, and under difficult circumstances, and a final judgment, together with the decision of the court determining that Barton Able was the legal informer. If there had been no partial remissions, the amount paid would have been three times the amount actually received. The legal power to remit, caused a corresponding reduction of the amount to be received by the United States and the informer, respectively. The object in view by this motion, as disclosed by the letters of the late acting-commissioner, is to so far alter, or cause to be altered, the former judgment of this court, as to deprive the informer of a large portion of what, under an ordinary remission, he would still be legally entitled to. The mode proposed to effect that purpose is to have the money which has been actually paid over under the judgment, returned to the registry, so that the court may make a different distribution thereof, from what its former judgment required—an indirect mode, it seems, of having this court do what the law forbids, viz.: to alter a judgment of a former term to the prejudice of rights thus judicially determined. It is not necessary to review the terms of the original letter announcing the conditions of the compromise, further than to state that if its purpose was to have a definite sum paid to the proper officer, as taxes due, and another sum as a specific penalty contra-distinguished from a forfeiture, then it left no sum whatever for the court to distribute through the registry for the benefit either of the United States or the informer in the case tried; for the suit and judgment here was not for unpaid taxes, nor for the enforcement of any one of the many penalties in personam. Other suits might have been instituted and possibly have been successful to that end; but voluntary payments to revenue officers by way of compromise for alleged liabilities in personam without the institution of suits for the recovery thereof, are entirely outside the cognizance of courts, as they have and can have no jurisdiction over other than judicial proceedings. Hence if the claimants were supposed to rest under liabilities other than what this court had judicially determined, payments made to compromise them were purely executive questions, to be settled without reference to the judgment of forfeiture in this case, were questions with which this court had nothing to do, and for the details of which its registry could not be used. Money once in the registry can be removed therefrom only on the order of the court; and the court can make no orders except in cases pending before it. What revenue officers should collect taxes on spirits distilled in New Orleans, and not removed in bond, and what officers should receive payment for specific penalties, made without suit for violation of the internal revenue law, where said spirits were distilled, it is not necessary to inquire. The question is partly one of law and partly one of treasury modes of accounting among its officers. It suffices that in this case no such question is here for solution. But, it is said the intention was that after the compromise payments had been made (to whom to be made no intimation was given directly by the commissioner) the district attorney was to discontinue further proceedings. That suggestion omits due regard to the state of the record here. There had been no new trial granted, and no stay of proceedings or of execution. This court could at any moment, in conformity with law, at the suggestion of the informers or any other party in interest, have enforced judgment upon the verdict rendered. And further, after judgment, the usual modes of discontinuing proceedings would have been satisfaction thereof duly entered, or a perpetual stay of proceedings thereunder. If the perpetual stay had been sought, with or without terms, the action of the court would have been required, and its records of the case disclosed the final determination thereof. If satisfaction were entered, the amount of the original judgment would remain to be accounted for.

Without pursuing the inquiry further, it must suffice that this court did not consider originally, that the Case of Dorsheimer in the 7th Wallace was at all applicable to the facts and circumstances before it, especially as one of the consolidated cases had been to the United States circuit court whose mandate this court was bound to obey; and further that whether it committed error or not,

its power over the judgment then rendered is at an end.

It may not be improper to add that if any informality exists or error was committed, it probably was in not insisting rigidly upon compliance with the literal terms of the statutes. On examination of the papers on file in this case, and those with which it was consolidated, it appears that the terms of the compromise were received by this court as if legally determined upon the strength of a letter signed only by the late acting commissioner, in which he recites that the secretary of the treasury and the attorney-general had agreed thereto. There is nowhere on file in these cases duly authenticated evidence of a compromise with the permission in writing of the secretary of the treasury and of the attorney-general, nor of the opinion of the solicitor, first filed in the office of the commissioner. And as a suit in court had been commenced, and even a verdict had, it may be that duly authenticated evidence ought to have been submitted to the showing that the terms of the several acts of congress on which the power to compromise depends had been complied with. Section 7 of act of March 31, 1868 [15 Stat. 60], and section 102 of act of July 20, 1868 [Id. 166]. If the judgment could be now opened, the informer would have a just right to insist upon the enforcement of the original judgment for the full amount thereof, unless duly authenticated evidence was given that the power to compromise had been exercised according to the conditions prescribed, and on compliance with which the power alone lawfully can be used.

All of the many suggestions which would arise if this court could now review its original action in the premises need not be considered. It has entertained this motion that, if practicable, the district attorney may procure from the circuit court a correction of errors here, if any exist. Hence the motion will be overruled and the district attorney can except thereto; taking such action in the premises as he may deem the law permits, for securing a review by the United States circuit court if such review can be had.